UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUAN RUIZ-SANTOS,  )
    Petitioner,  )
              )
              )
    -V-  )         CIVIL ACTION
              )         NO. 05-10654-GAO
              )
LUIS SPENCER,  )
    Respondent.  )
              )

## PETITIONER'S MEMORANDUM IN SUPPORT OF GROUND ONE OF HIS PETITION FOR HABEAS CORPUS PURSUANT TO 28 U.S.C. §2254

### PRIOR PROCEEDINGS

On March 3, 1999, a grand jury for Essex County returned an indictment charging petitioner with trafficking in 200 grams or more heroin. Petitioner was tried by a jury on September 28, 1999 through September 29, 1999. The jury found petitioner guilty of trafficking in heroin. Petitioner was sentenced to fifteen years to fifteen years and one-day. See Mass.Gen.Laws Chapter 94C, Section 32E(c)(4).

On November 23, 1999, petitioner appealed his conviction to the Massachusetts Appeals Court ("AC"). Petitioner raised three issues for review, (i) the evidence was insufficient to convict petitioner; (ii) the trial judge erred reversibly by declining to instruct on the lesser included offense of possession of heroin, and (iii) cumulative, additional errors resulted in the conviction.

On November 24, 2004, the ("AC") issued a Rule 1:28 slip opinion affirming petitioner's conviction. See Commonwealth v. Ruiz-Santos, 62 Mass.App.Ct. 1112 (2004) (See attached). On December 18, 2004, petitioner filed an application for further appellate review with the Supreme Judicial Court for Massachusetts ("SJC"). In petitioner's application he argued that the evidence was insufficient to sustain the conviction, and one other claim that is not relevant to this petition. On February 2, 2005, the ("SJC") denied petitioner's ("ALOFAR"). See Commonwealth v. Ruiz-Santos, 443 Mass. 1103 (2005). On April 1, 2005, petitioner filed a petition for a writ of habeas corpus with this Court. This Court allowed petitioner to delete Ground Two of his petition and Ground One is the topic of this petition.

## STATEMENT OF THE FACTS

### The Commonwealth's Case

Massachusetts State Trooper Brian O'Neill testified that he was a narcotics investigator and had been so employed by the Essex County District Attorney's Office for six years. (Tr: I/66).[1] He testified that he was trained in the field of narcotics investigation, and that

---

[1] (Tr: "___/___"), means parts of the trial transcripts that on are file in the State Court.

during the first week of February, 1999, he was involved in an investigation targeting 15-17 Sanborn Street in Lawrence and a person known as Oscar Rivera. (Tr: I/67-69). He then testified as follows on direct examination by the prosecutor:

O'Neill obtained a "no knock" search warrant for 17 Sanborn Street on February 5 authorizing him to search the premises and "areas associated with that location," for heroin and related paraphernalia. (Tr: I/71). He executed the warrant at 5:15 a.m., and broke into the building by force in the company of a "SWAT" team. (Tr: I/72-74). The front door was heavily fortified, indicating to O'Neill an effort to delay a forced entry. (Tr: I/75).

Once inside, O'Neill received information by radio that someone was trying to jump out of a building window. (Tr: I/75). He went up the stairs, forced the door of the second floor apartment, and followed other officers through a TV room and a kitchen to two back bedrooms. (Tr: I/78). He observed other officers securing one male in the left bedroom and another male in the right bedroom. Id.

In the left bedroom, O'Neill observed that the window was broken and had blood on it, and that the occupant of that room had a large, bleeding cut on his hand. (Tr: I/79).

-4-

Trooper O'Neill had this person secured in the kitchen, returned to the room, and discovered a handgun in a boot under the bed. (Tr: I/80). He also discovered an ammunition clip, and both this and the gun were entered into evidence without objection. (Tr: I/81). Bullets from the gun and a certificate of examination indicating that the gun was successfully test fired entered without objection. (Tr: I/83).

The man found in the left bedroom identified himself as "Oscar Rivera," and O'Neill found a wallet in the room containing an ID in that name and a Brockton address.[2] (Tr: I/83-84). Petitioner was taken from the other apartment bedroom and seated on the kitchen floor, and two women and some children who were also in the apartment were seated on a couch in front of the TV. (Tr: I/86).

Trooper O'Neill discovered an electric grinder in a pantry containing what appeared to him to be residue from the process of converting heroin in bulk into heroin packages for distribution, no objection was made. (Tr: I/88-89).

---

[2]    The person discovered in the left rear bedroom with the gun, who identified himself as Oscar Rivera, was the codefendant in this case. (Tr: I/83, 98-99).

-6-

leading out to the front porch, but there were no other
apartments on that floor. Id. Within this closet,
O'Neill found some clothes, parts of a bed frame, and a
box with heat sealer. (Tr: I/103). O'Neill testified
that he recognized from his training that the heat
sealer was used to seal bags of heroin, no objection was
made. Id.

Trooper O'Neill found a cut out space under the
floor of this closet. (Tr: I/105). A photograph of this
space entered over objection. (Tr: I/106-108). O'Neill
found various plastic bags inside this cut out space,
which he removed and opened. (Tr: I/108). Within the
trash bags were 168 clear sandwich bags, and within these
were 50 glassine bags of heroin, each ink stamped with
the words "high dragon" (photo of bags, no objection was
made).(Tr: II/4-5).

These baggies were transferred to a state police
lab, and the lab provided a written analysis
indicating that they contained 542.74 grams of heroin
(bags and written analysis, no objection was made).
(Tr: II/6-9). A second analysis for 49 baggies not
containing the stamped words, also retrieved from the
cut out space, stated that these consisted of 3.33 grams
of heroin (bags and analysis, no objection was made).
(Tr: II/10-11). Also in this space, O'Neill found a
plastic bag of loose heroin, and this was analyzed as

46.3 grams of heroin (analysis and bag, no objection was made). (Tr: II/12-13).

Other items that O'Neill found in the cut out space were a digital scale, scotch tape, stamped boxes, bags, ink pads, a "high dragon" rubber stamp, and packages of (mannite), all of which were placed into a laundry basket (photograph, basket contents, no objection was made). (Tr: II/14-16, 23). Trooper O'Neill understood these items as generally used to transform bulk heroin into dosage units for distribution. 8,300 such dosage units were retrieved from the cut out space outside of the apartment in the hallway closet sub-floor space. (Tr: II/16).

Trooper O'Neill returned to the codefendant's bedroom (1left), and was shown by other officers "several picture identification cards and forms of identification which appeared to have his picture on it with different names." (Tr: II/24). These included "an identification card issued by the state of New Hampshire, bearing a picture of the codefendant and the name of Pedro J. Ortiz Espada," no objection was made. (Tr: II/25). After retrieving this, O'Neill went to the right bedroom, which the defendant (petitioner) had occupied. Id. Other officers showed him "a passport with the name [of the petitioner] and a picture [of him]" they had seized there, no objection was made. (Tr: II/26).

-8-

Trooper O'Neill stated that the picture was of the
defendant (petitioner), who occupied the right rear
bedroom. Id. Two identification cards, one from
Dominican Republic and the other from Rhode Island, each
bearing the (petitioner's name and picture, along with a
social security card bearing petitioner's name, were also
located in the righttrear bedroom, no objection was made.
Id. A Massachusetts ID bearing a picture of petitioner
and the name "Ippolito Velasquez," and a social security
card with that name, were also found in the room, no
objection was made. (Tr: II/28-29).

The last piece of evidence seized from the right rear
bedroom was a telephone bill under the petitioner's
name with the billing address of the apartment at 17
Sanborn Street (hearsay/best-evidence/relevance
objections overruled). (Tr: II/30-32). Trooper O'Neill
left the bedroom and returned to the kitchen and opened
the refrigerator, within which he found a bag containing
95.68 grams of loose heroin (bags and certificate of
analysis, no objection was made by codefendant).
(Tr: II/36-37). This heroin was stated in the analysis
to be twice the purity of the other heroin seized.
(Tr: II/37). O'Neill estimated the street value for all
the heroin of between 150 thousand and 175 thousand
dollars. (Tr: II?42).

### The Defense Case

Petitioner called no witnesses, and he made two motions for a required finding of not guilty. (Tr: II/68, 70). During cross-examination of Trooper O'Neill, the only witness in this case, the officer testified as follows:

Petitioner made no effort to escape. (Tr: II/48). Neither petitioner's name nor his picture was found in either hide space, or outside of his room. Id. No weapons were found in petitioner's room. (Tr: II/49). Regarding the other apartment occupants, the older woman, whose ID was found there, was not arrested. (Tr: II/50). Petitioner was not prosecuted for joint possession of the loaded gun found in the left bedroom. (Tr: II/51-52).

### ARGUMENT

I.    THE EVIDENCE AGAINST PETITIONER AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S VERDICT OF GUILTY IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

The evidence presented to the State Court against petitioner is legally insufficient to convict under Massachusetts General laws, Chapter 94C, Section 32(e), and petitioner's motions for a required finding of not guilty should have been granted. (Tr: II/68-69). See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979); Jackson v. Virginia, 443 U.S. 307, 319 (1979). Even if,

in a light most favorable to the Commonwealth, the evidence proved that petitioner lived in the apartment within which the police discovered loose drugs and drug paraphernalia, this is not enough to prove trafficking. The Commonwealth did not prove his constructive possession of the trafficking weight drugs, which were found outside of the apartment in a space "accessible by a common stairway." See <u>Commonwealth</u> v. <u>Jones</u>, 54 Mass. App.Ct. 726, 727 (2002); <u>Commonwealth</u> v. <u>McGovern</u>, 397 Mass. 863, 868 (1986).

Trooper O'Neill described breaking down the front door of the building, and breaking into the apartment from the outer hallway.[3]  (Tr: I/74-75).  He recalled the top of the stairs "to the front porch," but speculated that this may have been "sealed off."[4]  (Tr: I/102). THis testimony could not support the petitioner's actual possession of the traffic weight drugs, because these drugs were in an outer hallway of an apartment house.[5]

---

[3]    The search warrant was attached to the petitioner's motion to suppress, and authorized police to enter "the target apartment by entering the left front door with 17 posted next to it then proceeding to the second floor and entering the second floor apartment, also any common areas ..."

[4]    There was no third floor, and the stairs did not lead to any other apartment. (Tr: I/77).

[5]    When the police were forcing open the door into the second floor apartment, they were already in the common hallway where the trafficking drugs were found. (Tr: I/75, 77, 102).

-11-

Constructive possession requires proof of knowledge and the intent and ability to exercise dominion and control. <u>Commonwealth</u> v. <u>Gonzalez</u>, 42 Mass.App.Ct. 235, 237 (1997).

Trooper O'Neill's testimony does not establish dominion and control as to petitioner because it is left to speculation whether a first floor apartment had access to the hallway, whether another apartment had access to the porch, or whether the door was actually sealed off.  Criminal liability through constructive possession does materialize into the evidence by way of a rebuttable presumption against petitioner.  The Commonwealth overlooked its burden to introduce evidence to establish this element of its case.

Viewing the evidence in a light most favorable to the Commonwealth, <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 676-677 (1979); <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 319 (1979), the prosecution made no legally sufficient case for constructive possession, for reasons contained in <u>Commonwealth</u> v. <u>Washington</u>, 50 Mass.App.Ct. 167, 170 (2000).

> There must be evidence of the defendant's particular relationship with the place where the contraband was found, separate and apart from the evidence that personal effects of the defendant were found in proximity to the contraband. <u>Id</u>. at 170.

In fact, no evidence was actually offered against petitioner to support an inference of his constructive possession. No drug paraphernalia was specifically traceable to him, no packets of drugs were found near his personal effects, no drugs ledgers were in evidence, and he was not tied to any distribution equipment found in either hide space. (Tr: I/26-34, 49).  Nothing, therefore, exists in the record to infer any "particular relationship" between petitioner and the place where the contraband was found. Commonwealth v. Washington, 50 Mass.App.Ct. 167, 170 (2000).  The Commonwealth did not prove that the area where trafficking drugs were found was under petitioner's dominion and control.  See Commonwealth v. Schmeider, 58 Mass.App.Ct. 300, 302-303 (2003) (evidence did not connect the defendant to the portions of the condominium where the drugs were found); Commonwealth v. McGovern, 397 Mass. 863, 868 (1986).

Petitioner's motions for a required finding of not guilty should have been allowed.  See Commonwealth v. Cavanaugh, 63 Mass.App.Ct. 111, 112-113 (2005) (appealed denial of required finding of not guilty/sufficiency of the evidence); Commonwealth v. Jones, 59 Mass.App.Ct. 157, 160 (2003) (two motions for a required finding of not guilty denied/judge committed error in denying both motions).

-13-

The evidence in petitioner's case indicated an exclusive relationship between the drugs and someone other than petitioner. The codefendant's picture ID's were found in the **inside** apartment cut out space, hidden next to ammunition for his gun. (Tr: I/91-99). Like the <u>Washington</u> case, the codefendant there was linked to stashed objects connoting the drug trade. <u>Id</u>. at 170. As there was no allegation that the defendant jointly possessed the gun, this weapon inferred the element of dominion and control away from the defendant and toward the armed man.

Furthermore, links that sustain a conviction are considered in detail in <u>Commonwealth</u> v. <u>Delarosa</u>, 50 Mass.App.Ct. 623, 627-628 (2000), and all were lacking in this case. The drugs found in the apartment were not matches for the hallway drugs in terms of purity or packaging. (Tr: II/37). <u>Id</u>. at 627-628. (connection through "similarity of drugs found in actual possession to narcotics in the stash"). Again, petitioner did not try to flee, or break out a rear apartment window in an effort to dispose of evidence. (Tr: I/79-80, 83). <u>Id</u>. (behavior of defendant at time of arrival of police relevant evidence). Nor did petitioner hide evidence in his boot, or try to protect the contraband with a weapon. <u>Id</u>. No "dosage units" were found in plain sight, or even within the apartment.

-14-

Absolutely no evidence linked petitioner to the codefendant's weapon, or to the ammunition, cash, and drud equipment hidden together with the codefendant's ID's. (Tr: II/49, 52). However, petitioner was linked to the apartment by the telephone bill in his name listing the apartment address. (Tr: II?34-35). This evidence is weaker than that against the defendant in <u>Delarosa</u>, <u>supra</u>, at 627, who was paying rent. In any event, the single tie to the apartment does not make a trafficking case for the distribution stash in the common hallway.

The facts in evidence in petitioner's case are identical to those in <u>Commonwealth</u> v. <u>James</u>, 54 Mass.App. Ct. 726, 729 (2002). Just as in <u>James</u>, drugs and drug parapheranlia were found in the apartment. <u>Id</u>. at 727. But, as in <u>James</u>, the trafficking weight stash was found outside of the apartment. In these circumstance, legally sufficient evidence to convict the apartment occupant with drug trafficking does not exist.

In <u>James</u>, the defendant was arrested in a third floor apartment containing a smaller amount of drugs, specifically cocaine, while 102.17 grams of cocaine were discovered in the third floor shed. <u>Id</u>. at 727-728. There was "a separate apartment on each floor and each apartment had a back porch, connected by a common stairway." <u>Id</u>. The <u>James</u> Court set aside the jury's

trafficking verdict, and ordered judgment for that defendant, for the same reasons that control the case here; "landlords, anybody could use [the shed] to get in to do repair work." Id. at 728.

Several individuals occupied the apartment where petitioner was arrested, and the police knew of no information indicating petitioner was involved with drugs before the raid. (Tr: II/46). See Commonwealth v. Sespedes, 58 Mass. 907, 910 (2003) (affirming denial of motion for required finding because defendant reliably identified by warrant affiant as dealing drugs). At most, the Commonwealth may have established "guilty knowledge," but this element alone is specifically insufficient to support a guilty verdict for trafficking in drugs. Commonwealth v. Hernandez, 439 Mass. 688, 692 (2003).

The state court judge should have allowed petitioner's motions for a required finding of not guilty. See Commonwealth v. Schmieder, 58 Mass.App.Ct. 300, 305 (2003); Commonwealth v. McGovern, 397 Mass. 863, 868 (1986); Commonwealth v. Cavanaugh, 63 Mass.App.Ct. 111, 112-113 (2005); Commonwealth v. Jones, 59 Mass.App.Ct. 157, 160 (2003); Commonwealth v. Lugo, 63 Mass.App.Ct. 204, 207 (2005) (same as Cavanaugh). See generally Jackson v. Virginia, 443 U.S. 307, 319 (1979).

II.  THE MASSACHUSETTS SUPREME JUDICIAL COURT ADJUDICATION
OF PETITIONER'S STATE-COURT CLAIMS RESULTED IN A DECISION
THAT (1) "WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW,
AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES,"
OR (2) "INVOLVED AN UNREASONABLE APPLICATION OF CLEARLY
ESTABLISHED LAW, AS DETERMINED BY THE SUPREME COURT OF THE
UNITED STATES"

"Under the standard established in the Antiterrorism
and Effective Death Penalty Act of 1996, Pub.L., No. 104-
132, §104 110 Stat. 1214, 1219 (1996), a federal court
may not issue a habeas petition 'with respect to any claim
that was adjudicated on the merits in State court
proceedings' unless the state court decision" 1) 'was
contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the
Supreme Court of the United States' or 2) 'was based on
an unreasonable determination of the facts in light of the
evidence presented in the State court proceedings.'"
28 U.S.C. §2254(d)(Supp. II 1996). McCambridge v. Hall,
303 F.3d 24, 34 (1st Cir. 2002); Williams v. Taylor, 526
U.S. 362, 413 (2000).  Additionally, "[a] state court's
findings on factual issues 'shall be presumed to be
correct' and the [petitioner] bears the burden of
disproving factual findings by 'clear and convincing
evidence.'" McCammbridge, supra, at 35; 28 U.S.C. §2254(e)
(1).

The first act the federal district court has to do
is identify the correct legal principle established by

the Supreme Court. Mccambridge, supra, at 36.

In this case, the Supreme Court president is Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Petitioner argues that the evidence presented by the State Court was insufficient to convict him for trafficking in heroin and the State Court's decision was an unreasonable application of Jackson. (See State Court's decision attached with State district attorney's appellate brief).

The Appeals Court simply denied petitioner's appeal in a cursory opinion citing the state district attorney's appellate brief pages 18-24. (See enclosed).

Petitioner further argues that the evidence presented by the State Court was insufficient to convict him for constructive possession of a controlled substance. See Hurtado v. Tucker, 245 F.3d 7, 12 (1st Cir. 2001); Torres v. Mullen, 317 F.3d 1145, 1163 (10th Cir. 2003).

In Hurtado, the Court held that "the failure of the state court to consider at all a key argument of the defendant may indicate that [the state court's] conclusion is objectively unreasonable." Or, "[t]he failure ... 'to give appropriate weight to all of the evidence'" may also indicate an unreasonable decision. Id. at 18.

Petitioner argues that the state court did not give appropriate weight to all of the evidence presented in state court, nor did the state court consider a key

argument of petitioner's.

First, the Massachusetts Appeals Court did not make
an independent determination of the case, but broadly
cited the state's district attorney's appellate brief in
its entirety. This does not make the state of the case
right because the state court failed to consider that
petitioner's name, photographs, notes, etc. were not
found in the hide in the cut floor, nor in the outside
hallway. Although the government argues that the stash
found in the hallway turns on whether the closet was
effectively within the apartment. (See enclosed, at pages
18-19).

The government never connected petitioner to the
stash found in the hallway and the state court literally
agreed with this argument in denying petitioner's appeal.
This was also a key argument that petitioner did not have
dominion and control over the drugs found in a separate
part of the apartment and separate from his bedroom.
Petitioner maintains that he cannot be convicted for
constructive possession in trafficking heroin based on
mere presence where drugs are discovered. Commonwealth
v. Ortega, 441 Mass. 170, 174 (2004).

Petitioner argues that the state court's failure to
consider all the evidence and a key argument of
petitioner's "is certainly ground[s] for further inquiry
if the state court ignores material facts." Hurtado,

-19-

supra, at 20.

The State Court's adjudication on the merits of his state court proceedings was an unreasonable application of Jackson v. Virgina, 245 F.3d 7, 16 (1st Cir. 2001); McCambridge v. Hall, 303 F.3d 24, 34 (1st Cir. 2002); Williams v. Taylor, 526 U.S. 362, 413 (2000).

## CONCLUSION

Based on the foregoing arguments, and for the reasons stated herein, petitioner would respectfully suggest that this Honorable Court GRANT his petition for writ of habeas corpus, or in the alternative, hold an evidentiary hearing upon the facts of this case.

                              Respectfully submitted
                              by the Petitioner,

                              *Juan Ruiz Santos*

                              _____
                              Juan Ruiz-Santos, pro-se
                              P.O. Box 43
                              Norfolk, MA 02056

Dated: February 14, 2006

## CERTIFICATE OF SERVICE

I, Juan Ruiz-Santos, certifies that he has served upon the Respondent's attorney, Daniel I. Smulow, Assistant Attorney General, One Ashburton Place, Boston, Massachusetts 02108-1598, one true and accurate copy of Petitioner's Memorandum In Support Of Ground One Of His Petition For Habeas Corpus Pursuant To 28 U.S.C. §2254, on this 14 day of February, 2006, by first class mail,

postage prepaid.

Juan Ruiz-Santos, pro-se

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

03-P-1502

COMMONWEALTH

<u>vs</u>.

JUAN RUIZ-SANTOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

After trial by jury, the defendant was convicted of
trafficking in 200 grams or more of heroin.  He contends on
appeal that (1) there was insufficient evidence to support the
conviction; (2) it was error for the judge not to have given an
instruction on lesser included offenses; and (3) the combined
effect of errors arising from certain police testimony, from the
prosecutor's opening statement, and from the joint trial with the
codefendant warrants a new trial.  We address each in turn.

1.  <u>Sufficiency of the evidence</u>.  The defendant contends
that the evidence did not suffice to prove constructive
possession of the heroin.  Taking the evidence, as we must, in
the light most favorable to the Commonwealth, we conclude
otherwise.  The Commonwealth's brief at 18-24 is persuasive on
the point.

2.  <u>Lesser included offenses</u>.  The defendant through counsel
took the position at trial that instructions on lesser included
offenses were unwarranted but, on appeal, contends the contrary.

For substantially the reasons set forth in the Commonwealth's brief at 25-27, we discern no merit in this new contention.

3. <u>Cumulative effect of asserted errors</u>. We are unpersuaded that the asserted errors, either singly or in combination, created any risk, let alone a substantial one, of a miscarriage of justice. See the Commonwealth's brief at 28-41.

<u>Judgment affirmed.</u>

By the Court (Laurence, Smith & Lenk, JJ.),

Clerk

Entered:  November 24, 2004.

2

18

## ARGUMENT

I.   SUFFICIENT EVIDENCE SUPPORTED, ON A CONSTRUCTIVE
     POSSESSION THEORY, THE CONVICTION FOR TRAFFICKING
     IN THE APPROXIMATELY 685 GRAMS OF HEROIN THAT THE
     POLICE SEIZED FROM THE DEFENDANT'S LAWRENCE
     APARTMENT BECAUSE: (1) THE APARTMENT WAS SPARSELY
     FURNISHED AND ITS ENTRANCE WAS HEAVILY
     BARRICADED; (2) THE DEFENDANT WAS FOUND IN A BED
     IN A REAR BEDROOM AS THE POLICE EXECUTED THE
     SEARCH WARRANT; (3) SEVERAL DOCUMENTS, INCLUDING
     A TELEPHONE BILL AND BOTH ACCURATE AND FALSE
     IDENTIFICATION PAPERS, LINKED THE DEFENDANT TO
     THE APARTMENT; AND (4) AN ELECTRIC COFFEE GRINDER
     WITH HEROIN RESIDUE WAS IN PLAIN VIEW ON THE
     KITCHEN PANTRY'S COUNTERTOP AND SOME OF THE
     HEROIN WAS IN THE REFRIGERATOR.[8]

     To sustain the conviction for trafficking in the

heroin seized from the defendant's apartment, the

Commonwealth must show that he possessed the heroin.

See Commonwealth v. Hernandez, 439 Mass. 688, 691

(2003).  Possession may be actual or constructive.

See Commonwealth v. Daley, 423 Mass. 747, 752 (1996).

"Constructive possession may be proved by 'knowledge

coupled with the ability to exercise dominion and

control.'"  Commonwealth v. Sabetti, 411 Mass. 770,

778 (1992) (citations omitted).

---

[8]  In reviewing the defendant's sufficiency claim,
this Court should "view the evidence at trial in the
light most favorable to the Commonwealth, and
determine 'whether ... any rational trier of fact
could have found the essential elements of the crime
beyond a reasonable doubt.'"  See Commonwealth v.
Grandison, 433 Mass. 135, 140-141 (2001) (citations
omitted).

S.A. 71

Here, the heroin was stored in two locations: in
the refrigerator and in a hide under the floor of the
closet in the second floor hallway directly across
from the defendant's front door.  Drug-related items,
but no heroin, were found in a similar hide in the
kitchen floor.  The defendant's identification papers
were found in the bedroom, but no similar possessions
were found in the hall closet.

Apart from the claim that the Commonwealth did
not establish a nexus between him and "any of" the
heroin (Tr. II/68-70), on appeal the defendant singles
out the "trafficking weight stash," arguing that the
hall closet was "outside the apartment."  See D. Br.
at 17.  Thus, the sufficiency of the evidence to
establish constructive possession of the large stash
found in the hall closet turns on whether the closet
was effectively within the apartment.

Proceeding on a constructive possession theory,
the Commonwealth established that the defendant knew
of the heroin and related paraphernalia in his
apartment and that he exercised dominion and control
over them.  He was found in a bedroom, still in bed,
as the police executed the search warrant (Tr. I/78-
79).  "Although mere presence where drugs are

S. A. 72

20

discovered is not enough to support an inference of possession of the drugs, the defendant's presence, coupled with a 'plus factor,' i.e., other incriminating evidence, may suffice." Commonwealth v. Ortega, 441 Mass. 170, 174 (2004) (citations omitted). See also Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 149 (1999) (same).

Here, the evidence supplied several "plus factor[s]." See Ortega, 441 Mass. at 174. Most importantly, in the early morning hours, the apartment had an unfurnished front room and the exterior front door was heavily barricaded, preventing access to the stairs that lead only to the defendant's apartment and the hallway closet (Tr. I/75-77, 102). This barricade delayed the police's entry and prevented them from entering unannounced (Tr. I/75). See Commonwealth v. Arias, 29 Mass. App. Ct. 613, 619 (1990) ("there could hardly be more potent evidence of an intention by the defendants to exercise dominion and control of the premises and its contents than their presence at an early morning hour in a heavily barricaded apartment, sparsely furnished ...").

Moreover, the police found five documents in the right rear bedroom, where the defendant was in bed,

S.A. 73

that bore his name and linked him to the apartment:
(1) a Bell Atlantic telephone bill with the
apartment's address; (2) a social security card; (3) a
passport; (4) a Dominican Republic identification
card; and (5) a Rhode Island identification card (Tr.
II/26-29). Compare Commonwealth v. Washington, 50
Mass. App. Ct. 167, 170 (2000) (defendant's
identification card, which was found near drug
paraphernalia, listed the target apartment as his
address). The latter three documents also contained
the defendant's photograph (Tr. II/26-29). See
Commonwealth v. James, 30 Mass. App. Ct. 490, 494
(1991) ("[p]apers belonging to the defendant were
found inside the third-floor apartment").

The same bedroom also contained the defendant's
false identification cards: a social security card and
a Massachusetts identification card, each bearing the
name "Ippollito Velasquez" (Tr. II/28-29). The
identification card bore the defendant's photograph
(Tr. II/28-29). These false identifications, found in
an apartment that also contained a large amount of
heroin and related items, allowed the jury to infer
that the defendant exhibited consciousness of guilt.
Compare Velasquez, 48 Mass. App. Ct. at 150 (when

S.A. 74

arrested, the defendant did not "disassociate himself
from the drugs in the basement; rather, he said he was
going to jail for two years, a remark that can be
taken as an expression of consciousness of guilt").

Additionally, an electric grinder with heroin
residue was in plain view on the kitchen pantry's
countertop (Tr. I/87). Its appearance indicated that
it had been used to convert heroin in bulk into heroin
packaged for distribution (Tr. I/88). See
Commonwealth v. Delarosa, 50 Mass. App. Ct. 623, 628
(2000)[9] ("paraphernalia in plain view is another factor
that may support an inference of constructive
possession"). See also Commonwealth v. Garcia, 409
Mass. 675, 687 (1991) (same).

Finally, according to the trooper's expert
narcotics testimony, the amount of heroin found in the
apartment "was the biggest dosage unit operation" that
he had encountered (Tr. II/40). The street value of

_____

[9]    The defendant argues that the evidence here
regarding constructive possession was weaker than the
evidence regarding constructive possession in
Delarosa. See D. Br. at 16-17. To the contrary, the
evidence here was just as strong, if not stronger.
Here, the defendant was found in bed, documents linked
him to the apartment, he had false identification, a
grinder with heroin residue was in plain view, and,
most significantly, the entrance to the apartment was
heavily barricaded.

S.A. 75

23

the heroin was "around $150,000, maybe $175,000" (Tr.

II/42).  Compare Sabetti, 411 Mass. at 779 (expert

testimony described "the nature and significance of

the contraband found within the vehicle").

Focusing on the hall closet, the defendant argues

that the Commonwealth did not prove that he

constructively possessed the heroin and related items

found there because it was accessible by a "common

hallway." See D. Br. at 12-13 & n.6.  The premise of

this argument – that the closet was in a "common

hallway" - ignores three salient facts: (1) the

apartment at number 15 had its own exterior door; (2)

the stairway leading to the defendant's apartment did

not lead to another floor or to any other apartments;

and (2) the exterior door to the stairway was heavily

barricaded so as to bar all entrants.  The trooper was

unsure if another door lead to the second floor's

front porch or if that door had been sealed off (Tr.

I/102).  But his testimony clearly established that a

heavily-barricaded door blocked the only way to enter

the hallway adjacent to the defendant's apartment and

the hall closet.  In effect, even if the exterior door

to number 17 did not, by itself, restrict access to

the stairway, apartment, and closet, this barricade

S.A.76

24

enclosed the closet within the apartment's confines.

Consequently, the evidence showed that the defendant

exercised dominion and control over the apartment, the

closet, and their contents, including the heroin and

related items.

The defendant also relies on Commonwealth v.

James, 54 Mass. App. Ct. 726 (2002), but this case is

readily distinguishable.  In James, this Court

reversed a trafficking conviction because no evidence

connected the defendant to an attic or the drugs found

therein.  See 54 Mass. App. Ct. at 729-731.  Here,

however, the barricaded door that protected the

apartment's exterior door and the hall closet, along

with the documents linking the defendant to the

apartment and the paraphernalia in plain view,

connected him to the heroin and related items found in

both the apartment's refrigerator and the hall closet.

S.A. 77