UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10654-GAO

JUAN RUIZ-SANTOS,
Petitioner,

v.

LUIS SPENCER,
Respondent.

MEMORANDUM AND ORDER
August 18, 2006

O'TOOLE, D.J.

Juan Ruiz-Santos petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He presents one ground for relief.[1] Relying upon Jackson v. Virginia, 443 U.S. 307 (1979), his contention is that the criminal conviction for which he is currently incarcerated was obtained in violation of his right to due process in that there was insufficient evidence at trial to permit a jury properly to conclude that he was guilty of the offense charged beyond a reasonable doubt.

Ruiz-Santos was convicted by a jury of trafficking in 200 grams or more of heroin, in violation of Mass. Gen. Laws ch. 94C, § 32E(c)(4), and sentenced to a term of fifteen years to fifteen years and a day in state prison. After his conviction was affirmed on direct appeal, he timely brought the present petition.

---

[1] He voluntarily withdrew a second ground after it had been determined that he had not exhausted his state remedies with respect to that claim.

Acting on information from a confidential informant, the Massachusetts State Police applied for and obtained a search warrant for the second floor apartment at 17 Sanborn Street, Lawrence, Massachusetts. The target of the investigation was not Ruiz-Santos, but his codefendant, Hector Pablo Henriquez Rodriguez. Upon execution of the warrant, the police expected to find and seize evidence of trafficking in heroin.

The second floor apartment at 17 Sanborn Street is located at the top of a flight of stairs that is accessed through a ground level exterior door. An interior door to the apartment is located at the top of the stairs. There are no other apartments at the top of the stairs, but there is a closet on the same landing as the interior door to the apartment. In other words, when one enters through the ground level exterior door, one finds a flight of stairs that leads directly, and only, to the entrance to the second floor apartment and the adjacent closet.

The police executed the search warrant at about 5:15 a.m., February 5, 1999. They found the ground level exterior door barricaded; another door had been propped against it at an angle from the inside, serving as a brace to keep the door from opening inward. The police used a battering ram to enter and gain access to the stairway. When they arrived at the second floor apartment, they similarly forced the door open and entered the apartment.

The front room was unfurnished. From there, the police proceeded through what appeared to be a television room into a kitchen area. Off the kitchen were two bedrooms. In one of the bedrooms, police found the petitioner's codefendant, Rodriguez, who was bleeding profusely from a cut on his hand. The glass in the bedroom window was broken. The searchers found a loaded handgun stuffed into a boot and covered by a sock.

The petitioner was still in bed in the other bedroom when the police entered. Found in his bedroom were various identification documents, including some that had his photograph but a different name. There was also a telephone bill in his name addressed to him at "17 Sanborn Street, apartment 2." No contraband or evidence of drug dealing (other than possibly the fake identification) was found in his bedroom.

In a pantry off the apartment's common kitchen, there was in plain view a coffee grinder on a counter that contained heroin residue. An officer testified that such instruments are often used by traffickers to grind bulk heroin into powder for cutting and packaging. In the kitchen refrigerator, police later found a package of unprocessed heroin, weighing slightly under 100 grams. In a hidden compartment within a closet in the kitchen, police found $12,500 in cash, ammunition for the handgun seized from Rodriguez's bedroom, and a number of identification documents, both real and apparently fake, for Rodriguez. When the police extended their search to the closet on the landing outside the apartment, they found a device for heat-sealing plastic bags and, in a concealed "hide" like the one in the kitchen closet, more than 500 grams of uncut heroin.

To convict the petitioner of the crime of trafficking in more than 200 grams of heroin, the Commonwealth was required to prove five elements beyond a reasonable doubt: (1) that he knowingly or intentionally (2) possessed (actually or constructively) (3) 200 grams or more (4) of heroin (5) with the specific intent to distribute it. See Commonwealth v. Ortega, 804 N.E.2d 345, 349 (2004). The petitioner's claim is that the evidence was insufficient to establish the second element – possession – beyond a reasonable doubt.

The Commonwealth relied on a theory of constructive possession. Under Massachusetts law, to prove constructive possession the Commonwealth was required to prove that the defendant not

only knew of the presence of the heroin, but also that he had both "the ability and intention to exercise dominion and control over it." See Hurtado v. Tucker, 245 F.3d 7, 12 (1st Cir. 2001) (quoting Commonwealth v. Cruz, 614 N.E.2d 702, 704 (Mass. App. Ct. 1993)).  The evidence easily warranted an inference that Ruiz-Santos knew at least of the presence (a) of the heroin that was kept in the refrigerator and (b) of the processing grinder, because those were effectively in "plain view" to any resident of the apartment.  Similarly, it could be inferred that the petitioner had the *ability* to exercise dominion and control over at least those items; they were as accessible to him as to anyone else living in the apartment.

The crucial question raised by the petitioner is whether the evidence was sufficient to justify the inference, essential to proof of constructive possession under state law, that he *intended* to exercise dominion and control over the heroin that he knew was present in the apartment.[2]

In defending the verdict on direct appeal, the Commonwealth argued that the inferences necessary to finding constructive possession were supported by trial evidence that the petitioner lived in the apartment; that the door permitting access to the apartment was crudely barricaded; that the defendant had some false identification papers, suggesting a consciousness of a need to conceal his true identity; and that a significant quantity of heroin and associated paraphernalia were found in places in the apartment commonly accessible to any resident, including a device that had apparently

---

[2] Once the jury had inferred that he had constructive possession of the heroin within the apartment, it would be only a short inferential step to additional inferences regarding other elements of the offense.  For example, the quantity of the heroin in the apartment together with the evidence of processing would have justified an inference that the heroin was possessed with the intent to distribute it.  Similarly, if the jury concluded that Ruiz-Santos possessed the heroin within the apartment with the intent to distribute it, it would have been rational to infer that such a distributor of heroin was aware of and had both the ability and intention to possess that heroin found purposefully hidden in the closet on the landing outside the apartment as well.

been used in the processing of the heroin for retail distribution.  See Respondent's Supplemental Answer, S.A. 71-79, Ex. 3, Commonwealth's Brief, at 22 n.9 (S.A. 75).

In affirming the conviction, the Massachusetts Appeals Court essentially adopted these reasons argued by the Commonwealth by reference.[3] The Supreme Judicial Court denied the petitioner's application for leave to obtain further appellate review without specifically addressing the issue.

The precise question presented here, of course, is not whether the state courts were correct in finding the evidence of possession sufficient to support a conviction beyond a reasonable doubt, but rather whether their judgment amounted to "a decision that . . . involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[4] As the First Circuit has noted, habeas review involves "the layering of two standards.  The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted." Hurtado, 245 F.3d at 16.  The applicable federal constitutional principle here, as in Hurtado, is the Jackson principle: "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id., (quoting Jackson, 443 U.S. at 319).  To succeed in his petition, Ruiz-Santos must show that the

---

[3] The court said: "The defendant contends that the evidence did not suffice to prove constructive possession of the heroin.  Taking the evidence, as we must, in the light most favorable to the Commonwealth, we conclude otherwise. The Commonwealth's brief at 18-24 is persuasive on the point." See Petitioner's Mem. in Supp. of Habeas Pet., Ex. 1, Mem. and Order, at 1.

[4] The petitioner does not claim that the state court decision was "contrary to" established Supreme Court precedent.

5

state court's application of this principle to the facts of his case was "objectively unreasonable." Hurtado, 245 F.3d at 16.

He has failed to sustain that proposition. It was not objectively unreasonable for the state courts to conclude that a rational trier of fact could have found that the Commonwealth had proved the element of (constructive) possession beyond a reasonable doubt. A rational jury, properly instructed in the elements of the offense, the definition of constructive possession, the use of circumstantial evidence as a basis for inferential reasoning, and the prosecution's burden of proof, could have been persuaded by the evidence at trial of the following: that Ruiz-Santos was a regular resident in the second floor apartment at 17 Sanborn Street; that the apartment was a place where large quantities of heroin were openly processed for distribution; that the apartment (as well as the closet on the landing outside the apartment) was protected by a barricaded door; that Ruiz-Santos not only knew *that* there was heroin in the apartment but *where* at least a substantial quantity of it was; and that a person who chose to reside in such a place was complicit to some degree in the evident trafficking operation. These conclusions would have justified the further conclusion that he had both the power and the purpose to exercise dominion and control over the contraband and associated paraphernalia within the apartment as needed. If this conclusion was formed, then, as noted above (see supra note 2, at 4) it would be a further rational inference that he had similar knowledge, ability and intention with respect to the heroin and related items stored in the closet on the landing.

Even if, on fine examination, it might be concluded that possible inferences were too weak to support proof of possession beyond a reasonable doubt, that would only mean that the decision of the state courts was incorrect. It is exceedingly difficult here to say that the decision was

6

objectively unreasonable. After all, the trial jury, properly instructed, pronounced itself satisfied beyond a reasonable doubt by the evidence. The trial judge, when asked, declined to say that the jury could not rationally have come to that conclusion. The Appeals Court, on direct review, ratified both the verdict and the trial judge's ruling. The Supreme Judicial Court declined to disturb the Appeals Court's affirmance. A judgment for the petitioner here can only rest on a pronouncement that all of these prior decision-makers had been objectively unreasonable – the habeas standard – and had made decisions that no rational decision-maker in their shoes could justifiably have made.

While it is true that the simple fact that other judges have formed a certain conclusion does not automatically mean that that conclusion is "objectively reasonable," see Hurtado, 245 F.3d at 17, still it is the responsibility of the petitioner to show why the conclusion must be regarded as *un*reasonable. And the closer the question, the more difficult it is to show that a particular answer given to it was unreasonable. Rather, "some increment of incorrectness beyond error is required." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

There is no indication in this case that the state courts failed "to consider at all a key argument of the defendant" or failed "to give appropriate weight to all of the evidence," circumstances which, if they existed, might lead to a conclusion that the decision was objectively unreasonable. See Hurtado, 245 F.3d at 18.

The petitioner has failed to show that the decision of the state courts was an unreasonable application of <u>Jackson</u> in the circumstances of his case.

For the foregoing reasons, the petition for a writ of habeas corpus lacks merit, and it is accordingly DENIED.

<u>August 18, 2006</u>                              <u>\s\ George A. O'Toole, Jr.</u>
DATE                                              DISTRICT JUDGE